UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TRACY DICKERSON ET AL.                          CIVIL ACTION

VERSUS                                          NO: 05-6667

CITY OF GRETNA ET AL.                           SECTION: "S" (5)

ORDER AND REASONS

**IT IS HEREBY ORDERED** that the "Motion for Summary Judgment on Behalf of
Defendants, the City of Gretna and Chief Arthur Lawson" is **GRANTED**.  (Document #65.)

**IT IS HEREBY ORDERED** that the "Motion for Summary Judgment on Behalf of
Defendant, Sheriff Newell Normand" is **GRANTED**.  (Document #77.)

I. BACKGROUND

Tracy and Dorothy Dickerson filed a civil rights action,[1] pursuant to 42 U.S.C. § 1983
against the City of Gretna; Arthur S. Lawson, Jr, the Chief of Police of the City of Gretna; the
Jefferson Parish Sheriff's Office; and Newell D. Normand, the Sheriff of Jefferson Parish.  The
Dickersons allege that Chief Lawson and former Jefferson Parish Sheriff Lee, who is now
deceased, formulated a policy to prevent them from crossing the Crescent City Connection on

---

[1]   The case was originally filed as a class action.  The court denied the request for class
certification as untimely.

foot and entering the City of Gretna.  They allege that the enforcement of the policy prevented

them from evacuating from the City of New Orleans in the aftermath of Hurricane Katrina, in

violation of their constitutional rights of freedom of assembly under the First Amendment, the

Due Process Clause, the Equal Protection Clause, freedom from unreasonable search and seizure

under the Fourth Amendment, freedom from excessive force under the Eighth Amendment, and

privileges of interstate and intrastate travel.  The plaintiffs also allege state law claims of

intentional infliction of emotional distress, false imprisonment, and assault and battery.

The court granted the defendants' motion to dismiss the claims relating to intrastate

travel.  The plaintiffs agreed to dismiss the claims of freedom of assembly under the First

Amendment, excessive force under the Eighth Amendment, and Equal Protection.  The City of

Gretna, Chief Arthur Lawson, and Sheriff Normand filed motions for summary judgment.  The

Dickerson's agree that the facts are undisputed.

## II. DISCUSSION

### A.  Legal standard

Summary judgment is proper when, viewing the evidence in the light most favorable to

the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is

entitled to judgment as a matter of law."  Amburgey v. Corhart Refractories Corp., 936 F.2d 805,

809 (5th Cir. 1991); Fed. R. Civ. P. 56(c).  If the moving party meets the initial burden of

establishing that there is no genuine issue, the burden shifts to the non-moving party to produce

evidence of the existence of a genuine issue for trial.  Celotex Corp. v. Catrett, 106 S.Ct. 2548,

2552 (1986).  The nonmovant cannot satisfy the summary judgment burden with conclusory

allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  A fact is "material" if its resolution in favor of one party might affect the outcome of the lawsuit.  Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  Id.  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case.  Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

## B.  Municipal liability under § 1983

The Dickersons contend that an agreement was reached by the City of Gretna, the Jefferson Parish Sheriff's Office, and the Crescent City Connection Bridge Police to close the bridge to pedestrian traffic.[2]  The Dickersons argue that the official policy to close the bridge to pedestrian traffic "set the stage" for officers of three law enforcement agencies to violate their constitutional rights by enforcing the policy decision.

A suit against Chief Lawson and Sheriff Normand in their official capacities is in essence a suit against the City of Gretna and the Jefferson Parish Sheriff's Office.  Woodard v. Andrus, 419 F.3d 348, 352 (5th Cir. 2005) (citing Monell v. Dep't of Soc. Serv., 98 S.Ct. 2018, 2035 n.55 (1978)).  A local governmental body is liable for damages under § 1983 for constitutional violations resulting from official policy.  See Monell v. Dep't of Soc. Serv., 98 S.Ct. at 2035-36.

---

[2]   The defendants contend that the formal decision to close the bridge to pedestrian traffic was made on Thursday, September 1, 2005.  The plaintiffs contend that the bridge was actually closed on Tuesday, August 30, 2005, when they attempted to cross.

A municipality or government body cannot be held vicariously liable under §1983 for the constitutional torts of its employees or agents.  Id. at 2037.

To establish liability for a constitutional violation against the governmental bodies, the plaintiffs must demonstrate that the alleged constitutional offense is the policy or custom of the governmental body.  Woodard v. Andrus, 419 F.3d at 352.  "[A] government's liability is not confined to laws or actions that have been given formal approval through an entity's policymaking channels.  Id.  A policy or custom becomes official for purposes of § 1983 when it results from the decision or acquiescence of the municipal officer or body with "final policymaking authority" over the subject matter of the offending policy.  Gros v. City of Grand Prairie, 181 F.3d 613, 615 (5th Cir. 1999).  Id. (internal citations omitted).  "[T]he unconstitutional conduct must be directly attributable to the municipality or government entity through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability."  Id.  Thus, "a policymaker, an official policy, and the 'moving force' of the policy are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself."  Pitrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).

Chief Lawson, the City of Gretna, and Sheriff Normand contend that no custom or policy adopted by Chief Lawson, the City of Gretna, former Sheriff Lee, or the Jefferson Parish Sheriff's Department violated the Dickersons' constitutional rights.  The defendants argue that they are entitled to judgment as a matter of law on the claims of violations of their right to travel and to be free from unlawful search and seizure.

4

### 1. Interstate travel claims

The defendants contend that the Dickersons have not demonstrated a custom or policy that violated their right of interstate travel.  In support of his argument, the defendants put forth the deposition testimony of Tracy and Dorothy  Dickerson that they were able to cross the bridge in the back of someone's pick-up truck, and no officer stopped them.

Tracy testified that, on August 30, 2005, he approached two New Orleans police officers near Baronne Street and Howard Avenue and asked if they would be allowed to cross the bridge. Dep. at 28.  The officers advised that there no pedestrian traffic was allowed on the bridge.  Id.

After resting for a while, Tracy noticed a truck on Baronne Street and approached the driver and asked if they could have a ride.  Id. at 30-31.  The driver told him and others that were looking for a ride to jump in the back of the truck, and he drove them across the bridge.  Id. at 32.  The Dickersons and friends who were with them were dropped off at the General DeGaulle exit and sat on a bench for a couple of hours.  Id. at 34-35.  As they made their way to Terry Parkway, they encountered two Jefferson Parish officers who instructed them to turn around and go back to New Orleans because they could not enter Gretna.  Id. at 37.  Tracy and his group returned to the benches on General DeGaulle.  Id. at 39.  After resting for a while, Tracy approached a man at an old car wash, and the man agreed to give them a ride as far as Barataria Boulevard by way of the Westbank Expressway.  Id. at 41.

After another rest at Barataria Boulevard, the group continued walking, flagging down cars on their way in an attempt to get a ride.  Id. at 41-46.  Tracy testified that they received short rides from several people and eventually arrived at the foot of the Huey P. Long Bridge.  Id. at

46-49.  A man eventually picked them up and gave them a ride to Baton Rouge.  Id. 49-51.

One of the people with the Dickersons called a friend in Baton Rouge, who took them to the casino, which was open all night.  Id. at 52-53.  The manager would not permit them to enter with luggage; but an employee told them to put the luggage in his car until he got off of work, and he would take them anywhere they wanted to go.  Id. at 53.  The casino employee took them to the airport to pick up a rental car, which Tracy had reserved on his way to Baton Rouge.  Id. After reuniting with family members and spending a night in a Baton Rouge hotel, the group proceeded to Houston.  Id. at 55.

In her deposition, Dorothy recalled that she, her husband, and neighbors walked toward the Superdome and then proceeded on Poydras Street toward the Mississippi River.  They intended to walk across the bridge to safety, but they encountered what she believed to be a Jefferson Parish policeman, who "was turning everybody around" at the bottom of the ramp to access the bridge.  Dorothy testified that her husband flagged down a truck, and the driver drove them and their friends across the bridge.  The remainder of Dorothy's deposition testimony is consistent with Tracy's recollection of their ordeal as they made their way to Houston.

As discussed in Alexander v. City of Gretna, No. 06-5404 (E.D.La. Dec. 3, 2008), not every infringement on interstate travel implicates the denial of a fundamental right.  "Travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on travel do not amount to denial of the fundamental right to interstate travel."  Cramer v. Skinner, 931 F.2d 1020, 1198 (5th Cir. 1991).  The right to interstate travel "does not mean that areas ravaged by flood, fire or pestilence cannot be quarantined when it can be demonstrated that

unlimited travel to the area would directly and materially interfere with the safety and welfare of the area." Zemel v. Rusk, 85 S.Ct. 1271, 1280 (1965).

In the aftermath of Hurricane Katrina, New Orleans and the surrounding area suffered unprecedented damage that created difficult decisions regarding the safety of its inhabitants.  The restrictions on foot traffic across the bridge was one of many measures taken to address serious safety issues.  The Dickersons suffered the inconvenience of having to wait a very short time until they were able to travel across the bridge in a vehicle.  After enduring extremely difficult and stressful situations and inconveniences, the Dickersons were able to travel to Baton Rouge and later Houston.  However, the restriction of pedestrian traffic on the bridge and the temporary delay in crossing the bridge does not amount to the denial of the Dickersons' fundamental right to interstate travel.  The defendants are entitled to judgment as a matter of law on the right-to-travel claim.

### 2.  Search and Seizure

The defendants contend that the facts do not state a claim for relief for a violation of the plaintiffs' rights under the Fourth Amendment.  They argue that the plaintiffs have not alleged any policy to use force or that they were personally subjected to the use of force or the "threat of force."

"The first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendants] are charged."  Baker v. McCollan, 99 S.Ct. 2689, 2692 (1979). Historically, "[t]he liberty preserved from deprivation without due process included the right generally to enjoy those privileges long recognized at common law as essential to the orderly

pursuit of happiness by free men." Ingraham v. Wright, 97 S.Ct. 1401, 1413 (1977).  "While the contours of the historic liberty interest in the context of our federal system of government have not been defined precisely, they always have been thought to encompass freedom from bodily restraint and punishment." Id. at 1413-14.

A seizure occurs when government actors have "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen." Terry v. Ohio, 88 S.Ct. 1868, 1879 n.16 (1968).  In Graham v. Connor, 109 S.Ct. 1865, 1871 (1989), the Supreme Court explicitly held that a claim that arises in the context of  the restraint of liberty of a free citizen is properly characterized as one invoking the protections of the Fourth Amendment and is analyzed under the reasonableness standard.  "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Id.; see also Saucier v. Katz, 121 S.Ct. 2151, 2158 (2001) (analysis is under Fourth Amendment standard, not substantive due process principles).

The Dickersons have set forth no facts to support an unreasonable restraint of liberty in violation of the Fourth Amendment.  Their deposition testimony indicates that, in their encounters with law enforcement, they were told to keep walking and informed of certain restrictions that were in place.  There is no evidence that physical force or verbal abuse was used or that their liberty was restrained.  The defendants are entitled to judgment as a matter of law on the Fourth Amendment claims.

## C.  State law claims

8

The defendants contend that the plaintiffs have put forth no evidence to support allegations of intentional infliction of emotional distress, assault, or battery.  They argue that the deposition testimony is devoid of any reference to extreme or outrageous conduct by the officers they encountered or that they suffered emotional distress as a result of the interaction with officers.

The plaintiffs have not put forth evidence to support their state-law claims.  Because the Dickerson bear the burden of proof at trial, the defendants need only point out the absence of evidence to support the state law claims.  Accordingly, the defendants are entitled to judgment as a matter of law on the state law claims.

### III. CONCLUSION

The plaintiffs have agreed to dismiss the claims of freedom of assembly, the use of excessive force, and equal protection, and those claims are **DISMISSED**.  There are no disputed issues of material fact, and the defendants are entitled to judgment as a matter of law on the claims of violation of the constitutional rights of interstate travel and to be free from unreasonable restraint of freedom, and the state-law claims.

New Orleans, Louisiana, this  1st  day of February, 2010.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**